**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

JUN 2 7 2019

**JAVONTE SMITH ET AL.,**

     **Plaintiffs,**

**v.**                                                    **Civil No. 2:18cv589**

**SCHOOL BOARD OF THE CITY**
**OF CHESAPEAKE ET AL.,**

     **Defendants.**

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss by defendants School Board of the City of Chesapeake, Naomi Dunbar, Dawn Cyr, Freddie Spellman, James Roberts, and Jeff Bunn (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 5, and a Motion for Leave to File an Amended Complaint by plaintiffs Javonte Smith and Lavone Smith (collectively "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 15(a)(2), ECF No. 23. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). Thus, the Court **DENIES** Defendants' request for a hearing.

For the reasons stated below, Defendants' Motion to Dismiss Plaintiffs' claim under 42 U.S.C. § 1983 is **GRANTED** and Plaintiffs'

remaining state law claims are **REMANDED** to the Circuit Court for the City of Chesapeake.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

On May 11, 2016, plaintiff Javonte Smith ("Javonte") (who was seventeen years old at the time) and other students were participating in a game known as "Sharks & Minnows" ("Game") during their physical education class at Indian River High School ("Indian River"), a public school operated by defendant School Board of the City of Chesapeake ("Board"). Compl. ¶¶ 2, 16, ECF No. 1-2. The Game was a version of tag that involved students acting as "sharks" chasing other students acting as "minnows" as they sprinted from one end of the basketball court in the gymnasium to the other. Id. ¶¶ 16-17. During the Game, Javonte acting as a "minnow" was sprinting to one end of the court to avoid being tagged by a student acting as a "shark." Id. ¶ 21. In an effort to slow and stop himself once he reached the end, Javonte extended his arms toward a wall of the gymnasium, ultimately making physical contact with the wall. Id. ¶¶ 21-22. The impact caused serious and permanent injuries to both of Javonte's wrists. Id. ¶¶ 21, 29, 31.

---

[1] The facts recited here come from the Complaint and are assumed true only to decide the motion to dismiss. The facts stated here are not factual findings for any purpose other than consideration of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

In addition to the pain and suffering caused by the injuries, Plaintiffs allege that Javonte is now unable to perform occupational tasks that he could have otherwise performed and is, thus, permanently impaired in his earning capacity. Id. ¶ 31. Additionally, Plaintiffs allege that Javonte's father, plaintiff Lavone Smith ("Lavone"), incurred and will continue to incur medical expenses on behalf of Javonte. Id. ¶ 14.

Defendant Naomi Dunbar ("Dunbar"), the Principal of Indian River at the time of the incident, had direct and supervisory duties to protect the bodily integrity of the students, including Javonte, and to set and follow school policies. Id. ¶ 8. Defendants Dawn Cyr ("Cyr") (a physical education teacher at Indian River), Freddie Spellman ("Spellman") (Indian River's Athletic Director), James Roberts (the Superintendent of Chesapeake Schools), and C. Jeff Bunn (the Chairman of the Chesapeake School Board) were also charged with protecting the bodily integrity of the students, including Javonte. Id. ¶ 9-12. On the day of the incident, Plaintiffs allege that Javonte was under the care, custody, and control of all of the Defendants. Id. ¶ 13. Prior to the incident, the Defendants had actual and/or constructive notice that the Game posed a risk of injury for students and that the Game had, in fact, led to student injuries in the past. Id. ¶ 17. Moreover, the Defendants knew or should have known that, on the day of the incident, the Game would have been more dangerous

3

due to the number of students playing. Id. Despite Defendants' knowledge of the danger and the highly foreseeable risk of injury, and despite the fact that they had discussed banning the Game, none of the Defendants terminated the Game or banned it on the day of Javonte's accident, leading to the series of events described above. Id. 17, 20.

## B. Procedural Background

Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 against Defendants in the Circuit Court for the City of Chesapeake alleging that Defendants violated Javonte's fundamental right to bodily integrity. Notice of Removal, ECF No. 1. Defendants then removed the suit to this Court, asserting that federal jurisdiction was appropriate under 28 U.S.C. § 1331 because Plaintiffs' claim arises under federal law. Id. Defendants next filed the instant motion and the accompanying brief in support. Defs. Mot., ECF No. 5; Defs. Br., ECF No. 6. After the Court granted two motions for an extension of time, Orders Granting Mot. for Extension, ECF Nos. 17, 20, Plaintiffs filed a response, Pls. Resp., ECF No. 21. Defendants then replied. Defs. Reply, ECF No. 22.

After Defendants filed their reply, Plaintiffs filed a Motion for Leave to File an Amended Complaint, an accompanying brief in support, and a Proposed Amended Complaint. Pls. Mot. for Amended Compl., ECF No. 23; Pls. Br., ECF No. 24; Prop. Amend. Compl., ECF No. 25. Following Plaintiffs' request for leave to amend,

Defendants filed a request for a hearing, Defs. Request, ECF No. 26, and a brief in opposition to Plaintiffs' motion for leave to amend, Defs. Br. in Opp., ECF No. 27. Having been fully briefed this matter is now ripe for review.

## II. LEGAL STANDARD

The Rule 12(b)(6) standard of review permits dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Though a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

### III. ANALYSIS

### A. Section 1983 Claim

### 1. Basis for the Section 1983 Claim

Under 42 U.S.C. § 1983, a plaintiff may pursue a private right of action if a person, acting under color of state law, deprives the plaintiff of rights secured by the United States Constitution or conferred by a law of the United States. Wahi v. Charleston Area Medical Center, Inc., 562 F.3d 599, 615 (4th Cir. 2009). Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

6

42 U.S.C. § 1983. Plaintiffs' § 1983 claim is brought pursuant to Javonte's right to bodily integrity, which has been recognized as a liberty interest under the Fourteenth Amendment. See Meeker v. Edmundson, 415 F.3d 317, 323-24 (4th Cir. 2005). Plaintiffs argue that Javonte's constitutional right to bodily integrity was violated when Defendants allowed him and his classmates to play the Game because Defendants were deliberately indifferent to the risk of injury.

The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause recognizes two distinct categories of rights – procedural rights and substantive rights. See, e.g., Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). While procedural due process simply guarantees fair procedures (typically notice and opportunity to be heard), Mora v. City of Gaithersburg, 519 F.3d 216, 230 (4th Cir. 2008), substantive due process protections guard against "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Harford Cnty., 946 F.2d 278, 281 (4th Cir. 1991). Plaintiffs' claim falls within the substantive due process category.

"The Fourteenth Amendment's Due Process Clause protects a set of interests - life, liberty, and property - that are also protected by state tort law. Together with § 1983, then, there is some risk of the Clause supplanting state tort law in almost any suit alleging that a local official has caused harm." Waybright, 528 F.3d at 204. The Supreme Court has therefore taken a cautious approach to such claims. Id. In distinguishing between actions that rise to the level of a constitutional injury and those that are more akin to a state tort action, the Supreme Court has observed that the Clause, at its core, "combats 'arbitrary action' of government." Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)). It does not apply to ordinary governmental neglect, bad policy or inaction, but rather "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. (citation omitted).

This standard is high because "[i]n case after case, the Supreme Court has . . . spurned any approach to the Fourteenth Amendment that would make it 'a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" Id. (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm," Lewis, 523 U.S. at 848, and therefore, the Due Process Clause should not be "interpreted to impose federal duties

that are analogous to those traditionally imposed by state tort law." Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992).

As the Fourth Circuit noted in Waybright, two guiding principles can be gleaned from Supreme Court jurisprudence regarding the reach of the Due Process Clause. First, meritorious due process claims are those that "involv[e] a certain sense of constitutional magnitude." Waybright, 528 F.3d at 204. Since "applying the Clause to the ordinary run of governmental neglect, inaction, and bad policy would diminish it," the courts should apply the Due Process Clause to cases that involve "'only the most egregious official conduct.'" Id. (quoting Lewis, 523 U.S. at 846). Second, the Fourth Circuit notes that every extension of the Due Process Clause necessarily implicates a "concern for the authority of state governments over areas traditionally assigned to state law." Id. at 205. "[D]ecisions about how to allocate resources in state government 'involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" Id. (quoting Collins, 503 U.S. at 129).

In light of these principles, the Fourth Circuit has repeatedly held that conduct that is "wrong enough to register on a due process scale" is conduct that "'shocks the conscience,' and nothing less." Id.; accord Patten, 274 F.3d at 834 ("The substantive component of the due process clause protects against

only the most egregious, arbitrary governmental conduct-that is, conduct that can be said to `shock[] the conscience.'"). Defendants argue that Plaintiffs fail to state a constitutional due process claim under § 1983 because the alleged conduct cannot be said to "shock the conscience."

## 2. Degree of Fault

Determining whether conduct shocks the conscience turns on the degree of fault on the part of the actor imposing the harm. Waybright, 528 F.3d at 205. The Fourth Circuit has held that fault can generally be classified into three broad categories for due process purposes. First, "negligently inflicted harm" is "categorically beneath the threshold of constitutional due process." Id. (quoting Lewis, 523 U.S. at 849). Second, conduct that falls between negligent and intentional conduct, "may have constitutional implications, but only in special circumstances." Id. (emphasis added). Third, the type of conduct that is most likely to have due process implications because it shocks the conscience is conduct "intended to injure in some way unjustifiable by any government interest." Id. Therefore, in order to determine whether a Due Process Clause violation has been plausibly alleged, the Court must classify the nature of the conduct asserted by Plaintiffs.

### a. Negligence

Since the Fourth Circuit has unequivocally stated that the first category of fault, negligently inflicted harm, does not rise to the level of a constitutional due process violation, the Court need not address any claims that could be classified as mere negligence on the part of the Defendants. Plaintiffs' Complaint alleges, in part, that there was a due process violation because Defendants acted "negligently" and "carelessly," Compl. ¶ 23, which does not rise to the level of a constitutional violation.

### b. Intentional Conduct

Although the Court would normally next consider the second category of fault, asking whether there are allegations of culpability falling between negligence and intentional conduct that constitute "special circumstances," it will first examine the third category of fault to determine whether the Plaintiffs have alleged the conduct that most often amounts to a substantive due process violation: intentional conduct. In this category, "the general rule is that the action must have been 'intended to injure in some way unjustifiable by any government interest.'" Waybright, 528 F.3d at 205. (quoting Lewis, 523 U.S. at 849). For example, in the school context, the Fourth Circuit held a complaint sufficiently alleged a substantive due process claim where it alleged that the coach of a high school wrestling team "deliberately and intentionally instituted . . . unprovoked

beatings" of a student on the team. <u>Meeker</u>, 415 F.3d at 318-19, 321.

Here, Plaintiffs' Complaint fails to plausibly allege any conduct done with the <u>intent to injure</u> Javonte. Rather, the Complaint alleges that Defendants acted with "<u>reckless disregard of substantial risks of danger and harm.</u>" Compl. ¶ 25 (emphasis added). Thus, Plaintiffs have not alleged a substantive due process claim based on intentional conduct.

### c. Special Circumstances

Because Plaintiff has failed to allege a violation under the third category of fault, the Court must turn to the second, or middle, ground of culpability - culpability "following from something more than negligence but less than intentional conduct," <u>Waybright</u>, 528 F.3d at 205 - to determine if the facts alleged in this case fall within "special circumstances" such that they shock the conscience and implicate the Due Process Clause. Gross negligence or recklessness alone are not sufficient. The Due Process Clause is only implicated if gross negligence or recklessness occur in "special circumstances." <u>Id.</u> (quoting <u>Lewis</u>, 523 U.S. at 849); <u>Patten</u>, 274 F.3d at 834 (quoting <u>Lewis</u>, 523 U.S. at 849). Courts have found that special circumstances exist where there is either a "special relationship" or a "state-created danger." <u>Waybright</u>, 528 F.3d at 207.

In analyzing whether these special circumstances exist, the Fourth Circuit has cautioned against an overreaching application of the Due Process Clause. Since the "Fourteenth Amendment's Due Process Clause protects a set of interests – life, liberty, and property – that are also protected by state tort law[,] . . . courts should exercise 'judicial self-restraint' and 'utmost care' in novel substantive due process cases." Id. at 204. As a result, there is a "strong presumption that § 1983 due process claims which overlap state tort law should be rejected and the case, if diversity is lacking, sent to state court." Id. at 205 (emphasis added). After all, "[t]he Fourteenth Amendment is a part of a Constitution generally designed to allocate governing authority among the Branches of the Federal Government and between that Government and the States, and to secure certain individual rights against both State and Federal Government." Daniels v. Williams, 474 U.S. 327, 332 (1986). Therefore, "[w]hen dealing with a claim that such a document creates a right . . . to sue a government official" for conduct such as that asserted here, "we must never forget, that it is a constitution we are expounding," and this "Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." Id. (quoting

<u>McCulloch v. Maryland</u>, 17 U.S. 316, 407 (1819)) (emphasis in original).

### i. Special Relationship

The Fourth Circuit has recognized that a special circumstance can arise where there is a "special relationship." <u>Waybright</u>, 528 F.3d at 207. When the state is in a special relationship with a private individual, "it acquires a duty to act on that individual's behalf and <u>its failures to act are measured on a deliberate indifference standard</u>" – which may result in a finding of a due process violation. <u>Id.</u> (emphasis added).

A "'special relationship' is all but synonymous with a custodial relationship." <u>Id.</u> (citing <u>Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 199-200 (1989)). As an example, "that is why a conscious disregard of the rights of prisoners, pretrial detainees, and committed mental patients have traditionally been examined for deliberate indifference." <u>Id.</u> This requirement that a state affirmatively act for the safety of a private individual in these contexts is grounded in the premise that by taking custody of a person, the state has denied that individual the opportunity to provide for his own needs. According to the Supreme Court,

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e. g., food, clothing, shelter, medical care, and reasonable safety

14

> - it transgresses the substantive limits on state action
> set by . . . the Due Process Clause.

Deshaney, 489 U.S. at 200. The Fourth Circuit has held that this type of special relationship based on custody only comes about in a factual situation similar to "incarceration, institutionalization, or the like." Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir. 1995) (en banc). The affirmative duty to protect does not arise merely "from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. (quoting Deshaney, 489 U.S. at 200).

Here, Plaintiffs appear to be relying on the special relationship theory because they claim that Defendants acted with "'deliberate indifference' to Javonte's 'safety' and 'bodily integrity'" while he was under Defendants' "care, control and custody" as a student at the school. Compl. ¶¶ 13, 23. The question here is whether Defendants, by the scope of their role in relation to the school, are in a special relationship with Plaintiff, a student, that is custodial like incarceration or institutionalization.

The relationship between Javonte and Defendants is grounded in Virginia's school attendance statute.[2] Despite the fact that Virginia's school attendance laws impose some limit on a student's freedom to act on his own behalf, the Fourth Circuit, in an unpublished decision, has joined other circuits in finding that such a relationship between the school and the student does not create a special relationship sufficient to trigger the substantive protections of the Due Process Clause. See Stevenson v. Martin Cnty. Bd. Of Educ., 3 F. App'x 25, 31 (4th Cir. 2001) cert. denied, 534 U.S. 821 (2001) (unpublished) (holding that since "[a]ttending school is not the equivalent of incarceration or institutionalization," there is no special relationship formed between a student and a public school that implicates the Due Process Clause); see also D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1373 (3d Cir. 1992); Doe by Doe v. Hillsboro Indep. Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997); McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 464 n.4 (6th Cir. 2006); J.O. v. Alton Cmty. Unit Sch. Dist. 11, 909 F.2d 267, 272-73 (7th Cir. 1990); Lee v. Pine Bluff. Sch. Dist., 472 F.3d 1026,

---

[2] According to the Code of Virginia, "[e]xcept as otherwise provided in this article, every parent, guardian, or other person in the Commonwealth having control or charge of any child who will have reached the fifth birthday . . . shall . . . cause such child to attend a public school or a private, denominational, or parochial school or have such child taught by a tutor or teacher of qualifications prescribed by the Board of Education and approved by the division superintendent, or provide for home instruction of such child . . . ." Va. Code. Ann. § 22.1-254.

1030 (8th Cir. 2007); Maldonado v. Josey, 975 F.2d 727, 733 (10th Cir. 1992); B.M.H. v. School Bd. Of City of Chesapeake, 833 F. Supp. 560, 571 (E.D. Va. 1993) ("Even if public schools have some duty under state law to protect students, that is not enough to place the affirmative burdens of the Fourteenth Amendment Due Process Clause upon teachers, principals, and administrators to protect each child from possible harm by third parties.").

Therefore, since no "special relationship" exists in this context, the Defendants have not committed a substantive due process violation by acting with "deliberate indifference" and failing to protect Javonte from harm allegedly caused by their failure to ban the Game from gym class. However, the analysis does not end here because the Court must next determine whether the Defendants' conduct amounts to a substantive due process violation as a state-created danger.

### ii. State-Created Danger[3]

Under the state-created danger doctrine, "[w]hen the state itself creates the dangerous situation that resulted in a victim's injury, the absence of a custodial relationship may not be dispositive." Pinder, 54 F.3d at 1177. "At some point on the

---

[3] Although the Fourth Circuit has recognized the existence of the state-created danger doctrine, it has not, to this Court's knowledge, been faced with a set of facts justifying its application. See Turner v. Thomas, 313 F. Supp. 3d 704, 715-16 (W.D. Va. 2018) ("Ultimately, the Fourth Circuit has never issued a published opinion finding a successful 'state-created danger' claim.").

spectrum between action and inaction, the state's conduct may implicate it in the harm caused . . . ." Id. at 1175. "In such instances, the state is not merely accused of a failure to act; it becomes much more akin to an actor itself directly causing harm to the injured party." Id. at 1177. In those situations, even though there is no "custodial relationship" between the state and the injured private individual, the state's conduct creates in it a duty to protect the private individual from harm. Id.

The Fourth Circuit has recently held that "to establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." Doe v. Rosa, 795 F.3d 429, 439 (4th Cir. 2015) (emphasis added); accord Robinson v. Lioi, 536 F. App'x 340, 343-44 (4th Cir. 2013) ("[T]he state-created danger exception is a narrow one and . . . for the doctrine to apply, there must be affirmative action, not inaction, on the part of the State which creates or increases the risk that the plaintiff will be harmed by a private actor.") (emphasis added). Such factual scenarios subject governmental entities to claims that are tantamount to a claim that the state "directly caused harm to the plaintiff." Pinder, 54 F.3d at 1176 n.*.

Here, Plaintiffs' § 1983 claim is only based on Defendants' alleged "deliberate indifference" to Javonte's bodily integrity.

Notably, the Fourth Circuit has recognized that "apart from situations involving custody, the Supreme Court has never applied a deliberate indifference standard merely because the State created a danger that resulted in harm." Slaughter v. Mayor of Baltimore, 682 F.3d 317, 321 (4th Cir. 2012) (emphasis added). Thus, Plaintiffs' allegations appear insufficient to support a claim under the state-created danger doctrine. However, for clarity, the Court conducts an analysis of the state-created danger doctrine on these facts.

### (a). School Setting

First, the Court addresses substantive due process and state-created danger in the school setting. In Waybright, the Fourth Circuit was faced with the question of whether a Plaintiff could prevail on a substantive due process theory when injured in a state-operated workplace. Waybright, 528 F.3d at 207 (quoting Rivas v. City of Passaic, 365 F.3d 181, 194 (3d Cir. 2004)). The Fourth Circuit noted "that due process does not impose a duty on municipalities to provide their employees with a safe workplace or warn them against risks of harm (although state tort law may)." Id. Even though the facts in Waybright dealt solely with the state acting as an employer, the Fourth Circuit expressed concern for any theory of substantive due process rights that "would potentially set up a federal question whenever an accident happens during activities sponsored by the state." Id. at 208. The Court

stated that if substantive due process rights were to extend to accidents happening during state sponsored activities, federal authority might well be injected "into public school playground incidents, football (or even ballet) practice sessions, and class field trips . . . ." Id. (emphasis added). Such an extension of due process rights was not palatable to the Fourth Circuit because it would lead to a "displacement of state law with federal policies" of a magnitude that "would be difficult to overstate." Id. Therefore, relying on the Supreme Court's decision in Collins v. City of Harker Heights, the Fourth Circuit observed in Waybright that the Due Process Clause of the United States Constitution does not impose a duty on municipalities to provide their students with a safe environment – whether on a "playground," "football" field, or on a "class field trip[]." Id. (citing Collins, 503 U.S. at 129).

The Fourth Circuit expanded on this statement, stating that

Sometimes practice is demanding because games are demanding, and training is demanding because jobs are demanding, and how best to conduct these sessions can rarely be the focus of a constitutional claim. To transform ordinary mishaps into constitutional questions would not only bring them into federal court more frequently. Because Congress and the federal judiciary often set the ground rules for those claims in terms of scope of immunity, availability of punitive damages, award of attorneys' fees, and the like, the displacement of state law with federal policies would be difficult to overstate.

Id. (emphasis added). By using the word "rarely," the court recognized that injury caused at the hands of school actors can in some limited circumstances be the subject of a due process claim. For example, when conduct on the part of the school or its employees is intended to injure, such conduct implicates substantive due process protections. See, e.g., Meeker, 415 F.3d at 323-24 (finding an actionable substantive due process claim where a coach intentionally caused a student on the team to be physically beaten as a punishment).

A few courts outside the Fourth Circuit have extended the state-created danger doctrine to recreational contexts. See, e.g., Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 172 (3d Cir. 2017) (finding a viable state-created danger claim where a public school football coach instructed a student to continue playing despite the fact that the student was showing signs of a concussion); Hall v. Martin, No. 17-523, 2017 U.S. Dist. LEXIS 121099, at *7-9 (W.D. Pa. Aug. 2, 2017) (holding that a plaintiff adequately alleged a substantive due process claim under the state-created danger doctrine where the plaintiff was hit with a hockey puck during floor hockey in gym class and alleged the gym teacher created the danger by allowing students to play floor hockey without protective gear after encouraging the students to play the game like they were playing regular hockey); B.D. v. Downingtown Area Sch. Dist., No. 15-6375, 2016 U.S. Dist. LEXIS 80317, at *13

(E.D. Pa. June 20, 2016) (finding a state-created danger where school track coaches instructed students to run a course that intersected with the knowledge it had caused injuries in the past). However, courts in other circuits have declined to apply the state-created danger doctrine in analogous contexts. See, e.g., Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 875 (5th Cir. 2000) (finding no constitutional violation where a gym teacher made a student do 100 squats as a form of corporal punishment); Dorsey v. Pueblo Sch. Dist. 60, 140 F. Supp. 3d 1102, 1118-19, 1121-22 (D. Colo. 2015). For example, in Dorsey, the student plaintiff had a medical condition and was not allowed to participate in any activity that could compromise her physical condition. Dorsey, 140 F. Supp. 3d at 1108. The plaintiff was instructed to participate in a human pyramid in gym class, became dizzy, and fell off the pyramid onto the floor where there was no mat to cushion her fall. Id. As a result, the plaintiff suffered an injury. Id. The Court found that there was no substantive due process violation. Id. at 1118-22. Specifically, with regard to the state-created danger doctrine, the district court found that the defendants did not engage in an "affirmative act" that would implicate the doctrine because the complaint alleged inaction in the face of danger and, even if the defendants had engaged in an affirmative act, their conduct did not "shock the conscience." Id. at 1119, 1121-22.

As stated, in this Circuit, the Court of Appeals has expressly cautioned against extending the state-created danger theory to playgrounds, sports team practices, and field trips. Waybright, 528 F.3d at 208. Thus, the Court finds the case law of jurisdictions that dismissed analogous claims more aligned with Fourth Circuit guidance. In particular, the Court finds Dorsey persuasive. Even though the plaintiff in Dorsey was instructed to participate in the gym class activity, the district court found that there was no affirmative act on behalf of Defendants sufficient to implicate due process concerns. Dorsey, 140 F. Supp. 3d at 1121-22. Here, Plaintiffs do not allege any affirmative act. They do not even allege who, if anyone, instructed the students to play the Game. Rather, Plaintiffs' claims are based on a failure to act: Defendants' collective failure to "ban" the Game and allow it to continue. This is not a sufficient affirmative act necessary to implicate the state-created danger doctrine. Moreover, as Defendants argue, Plaintiffs' allegations fail to attribute any specific acts to the Defendants other than those imposed on them by the nature of their role in school operations, let alone any affirmative acts. Therefore, the state-created danger doctrine does not extend to the facts alleged. This conclusion is further justified by the Court's next two additional considerations.

## (b). Interactions with State Tort Law

Second, the type of injury that occurred in the present case is one which is also within the realm of state tort law. In Waybright, the Fourth Circuit considered such a scenario. There it stated that "[t]he Fourteenth Amendment's Due Process Clause protects a set of interests – life, liberty, and property – that are also protected by state tort law." Waybright, 528 F.3d at 204. As a result, if the Due Process Clause and § 1983 are construed too broadly, "there is some risk of the Clause supplanting state tort law in almost any suit alleging that a local official has caused harm." Id. The Supreme Court has counseled that the Fourteenth Amendment should not be "'a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" Id. (quoting Paul, 424 U.S. at 701). That is because "decisions about how to allocate resources in state government 'involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" Id. at 205 (quoting Collins, 503 U.S. at 129). Given the admonition from the Fourth Circuit and the Supreme Court regarding the Due Process Clause's interplay with state tort law, this Court is extremely hesitant to extend the state-created danger doctrine deeper into the realm of state tort law by applying it to incidents of unintentional harm caused by the alleged gross

negligence of school employees – a realm where the doctrine has not been applied historically in this Circuit. This cautionary approach is especially appropriate in light of this Court's third consideration.

### (c). Judicial Self-Restraint and Utmost Care

Third, the Fourth Circuit has often counseled that "courts should exercise 'judicial self-restraint' and 'utmost care' in novel substantive due process cases." Id.

> [C]ourts must be "reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended," which means that the courts must "exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges]."

Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (internal citations omitted) (second alteration in original). Applying the state-created danger doctrine in the context of an alleged unintentional harm caused by school officials during gym class would be a novel substantive due process claim. Therefore, the Court has treaded cautiously in determining whether to so extend the doctrine. As mentioned previously, in the Waybright opinion, the Fourth Circuit cautioned against inserting "federal authority into public school playground incidents, football (or even ballet) practice sessions, and class field trips . . . ." Waybright, 528 F.3d at 208. If this Court were to apply the state-created danger

doctrine to the facts alleged in the Complaint, it essentially would be allowing the type of claim that the Fourth Circuit counseled against in Waybright. As a result, the Court, exercising judicial self-restraint, concludes that the state-created danger doctrine does not apply on the facts alleged here.

### 3. Plaintiffs Fail to Allege a Substantive Due Process Claim

In the present case, the Plaintiffs have alleged that Javonte's right to bodily integrity was violated where school officials and employees, with knowledge that the Game was dangerous and caused injuries in the past, allowed students to play the Game during gym class. Plaintiffs indicate that Defendants were deliberately indifferent to Javonte's safety because they had discussed banning the Game but permitted Javonte and his classmates to play the Game anyway. Since the Court held above that the state-created danger doctrine does not apply to such situations, a "special circumstance," under which Plaintiffs can assert a plausible substantive due process claim, does not exist in this case. Moreover, since the "special relationship" doctrine, requiring the state to affirmatively protect those in its custody, is also inapplicable to the present case, there are no "special circumstances" warranting the application of the Due Process Clause to the "middle ground" of culpability. Lastly, the Plaintiffs have not alleged intentional conduct "intended to injure." Id. at 205. Thus, Plaintiffs have not alleged enough to

show that Defendants' conduct of allowing students to play a game of tag in gym class "shocks the conscience" in this context. As a result, Defendants' Motion to Dismiss Plaintiffs' § 1983 claim, which asserts a substantive due process violation, is **GRANTED** for failure to state a claim.

## 4. Alternative Grounds for Dismissal of Section 1983 Claim

In addition to their arguments that the Plaintiffs failed to adequately allege facts that satisfied the substantive due process standard, Defendants assert a few alternative arguments for dismissal of Plaintiffs' claim under 42 U.S.C. § 1983. First, Defendants argue that the claims against the Board should be dismissed because the allegations do not allege enough to establish municipal liability. Second, Defendants argue that the § 1983 claims against Naomi Dunbar, Dawn Cyr, Freddie Spellman, James Roberts, and C. Jeff Bunn (the "Individual Defendants") should be dismissed because (1) the claims against them in their official capacity are duplicative of the claims against the Board, (2) Plaintiffs fail to state a claim against them in their individual capacity, and (3) they are entitled to qualified immunity for the claims against them in their individual capacity. Third, Defendants argue that the § 1983 claims filed by Lavone should be dismissed for lack of standing. In light of the Court's decision to dismiss Plaintiffs' § 1983 claim in its entirety against all Defendants for failure to state a claim, the Court declines to

27

address these alternative arguments because doing so is unnecessary.

### 5. Leave to Amend

Plaintiffs have filed a motion for leave to amend their complaint. The Proposed Amended Complaint only modifies the Complaint by specifically identifying the state tort law claims. Prop. Amend. Compl. ¶¶ 27-42, ECF No. 25. It does not modify the allegations involving the alleged substantive due process violation. Additionally, based on the Court's finding that a substantive due process claim should not extend to this context, allowing another amendment to remedy the deficiencies of the Proposed Amended Complaint would be futile. Therefore, the Court **DENIES** Plaintiffs' motion for leave to amend the Complaint to the extent it seeks to amend the substantive due process violation claim.

### B. Remaining Claims Under State Law

Plaintiffs' Complaint includes what appear to be claims that arise under state tort law but are not labeled as such. Compl. ¶¶ 14, 23, 28, 32 (asserting that Defendants were negligent). Plaintiffs' Proposed Amended Complaint specifically alleges state law claims against all of the Defendants for simple negligence and gross negligence. Prop. Amend. Compl. ¶¶ 27-42. Given that the federal claims have been dismissed, the Court must determine

whether to continue to exercise supplemental jurisdiction over the state law claims, or remand the case to state court.

According to 28 U.S.C. § 1367, discussing supplemental jurisdiction of the United States District Courts,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). However, subsection (c) of that statute states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c). "[U]nder the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001). In making the determination regarding whether to retain jurisdiction, the Fourth Circuit has held that section 1367(c) provides the trial court with "wide latitude in determining whether or not to retain jurisdiction over state claims when all

federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

In exercising this discretion, the Court must consider the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id. In the present case, it would not be prohibitively inconvenient for the parties if the case was remanded to state court. The Plaintiff initially chose state court as a forum. Moreover, since one of the primary bases for the Court's cautious approach to its substantive due process analysis above was a respect for state tort law, it seems logical to allow the state courts to address the issues of simple negligence and gross negligence. Additionally, given the fact that there are no federal issues remaining, the Virginia state courts are particularly well-suited to address all the remaining non-federal issues. Lastly, since the case is at a relatively early stage in the litigation, with discovery yet to commence, it would not offend notions of judicial economy to remand the case to the original state court from which it was removed. Consequently, the Court **REMANDS** the case to the Circuit Court for the City of Chesapeake.

As noted, Plaintiffs request leave to amend their Complaint to specifically allege state law claims. The Court **DENIES** Plaintiffs' motion for leave to amend because Plaintiffs assert

that the original complaint was sufficient, an issue that is now properly left to the state court to decide on remand.

### IV. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion to Dismiss the § 1983 claim in Plaintiffs' Complaint, and **REMANDS** the remaining state law claims to the Circuit Court for the City of Chesapeake for such further proceedings as it may deem appropriate. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 27, 2019